NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

19-845

STATE OF LOUISIANA

VERSUS

DEVIN JALMAL HOLEFIELD

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 13504-18
HONORABLE CLAYTON DAVIS, DISTRICT JUDGE

**********

PHYLLIS M. KEATY
JUDGE

**********

Court composed of Shannon J. Gremillion, Phyllis M. Keaty, and Jonathan W. Perry, Judges.

MOTION TO WITHDRAW GRANTED.
CONVICTIONS AND SENTENCES AFFIRMED.

**John Foster DeRosier**
**District Attorney**
**Karen C. McLellan**
**Charles Robinson**
**Hope Wyatt Buford**
**Assistant District Attorneys**
**Post Office Box 3206**
**Lake Charles, Louisiana  70602-3206**
**(337) 437-3400**
**Counsel for Appellee:**
     **State of Louisiana**

**Chad M. Ikerd**
**Louisiana Appellate Project**
**Post Office Box 2125**
**Lafayette, Louisiana  70502**
**(225) 806-2930**
**Counsel for Defendant/Appellant:**
     **Devin Jalmal Holefield**

**Devin Jalmal Holefield**
**In Proper Person**
**#619531**
**Louisiana State Prison**
**M.P.C.B. Cell #1**
**Angola, Louisiana  70712**
**Defendant/Appellant**

**KEATY, Judge.**

On July 26, 2018, a Calcasieu Parish Grand Jury indicted Defendant, Devin Jalmal Holefield, for second degree murder, a violation of La.R.S. 14:30.1, and possession of a firearm by a convicted felon, a violation of La.R.S. 14:95.1. Defendant pled not guilty to both counts. By unanimous vote, a jury found Defendant guilty as charged. On May 15, 2019, the trial court sentenced Defendant to life imprisonment at hard labor for second degree murder and to twenty years imprisonment for possession of a firearm by a convicted felon, to run concurrently, without benefit of probation, parole, or suspension of sentence. Defendant appealed his convictions and sentences.

Appellate counsel filed a brief stating that no non-frivolous issues are available on appeal, and, thus, he seeks to withdraw pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396 (1967). Defendant filed a pro se brief assigning two errors. For the following reasons, we affirm Defendant's convictions and sentences, and we grant appellate counsel's motion to withdraw.

## FACTS

Gary O'Brien was murdered in Lake Charles in the early morning of Monday, July 17, 2017. Two days later, Defendant and Devonta Orphey were arrested in Waco, Texas, where they had gone in Defendant's car. They waived extradition and were transported back to Lake Charles. Defendant did not testify at trial, but he gave a statement to the police after his arrest, which was videotaped and played for the jury. In that statement, Defendant admitted that he; his cousin, Justin Ned, who was a minor at the time; Jermyre Bowers; and Orphey committed an armed robbery, or as he called it, "a lick," in DeQuincy in July of 2017. Several days later, the group decided to commit another "lick" in Lake Charles. Their intended target was O'Brien, also known as G-Money, a reputed drug dealer who

operated out of a small shed located behind his mother's house. Defendant explained that in the early morning of July 17, 2017, his three accomplices, who were dressed in all black and had their faces covered, armed themselves with handguns, and approached the victim's home on foot, while he stayed back in his car. When the trio returned, they told him that G-Money was shot after saying that he recognized them and refusing to "give it up." Defendant admitted that the two weapons found in his car at the time of his arrest in Waco belonged to him and Orphey.

At trial, all three of Defendant's accomplices named Orphey as the person who remained in the getaway car during the attempted robbery. Shameka Glover, whom Defendant referred to in his statement as a close friend, testified that after working on Sunday and getting off at midnight, she met Defendant, Orphey, and two other guys at the Hop-In Store. They arrived there in Defendant's car and Orphey was driving, which was confirmed by video obtained from the Hop-In which was shown to the jury during her testimony. Glover stated that the foursome was wearing all black clothing, and Defendant told her that they were "going hit a lick." Monday night, Defendant texted her to ask if she could come to his house after her shift ended. When she met with Defendant soon after midnight, he told her "the whole story about what happened that night that O'Brien -- G-Money -- got killed." Glover testified that Defendant confessed to her that he shot G-Money in the head when he started calling for his mother after being warned not to move or he would be killed. Defendant also told her that he and Orphey were planning to leave town soon but did not yet know where they were going.

**ERRORS PATENT**

In his *Anders* brief on behalf of Defendant, appellate counsel requests that we perform an errors patent review. This court, in accordance with La.Code

2

Crim.P. art. 920, reviews all appeals for errors patent on the face of the record. After review, we find two errors patent involving the sentence imposed for possession of a firearm by a convicted felon.

First, the sentencing court was required to impose a fine of not less than one thousand dollars nor more than five thousand dollars for Defendant's conviction of possession of a firearm by a convicted felon. La.R.S. 14:95.1(B). The trial court failed to impose the mandatory fine, rendering the sentence for possession of a firearm by a convicted felon illegally lenient. Second, the sentencing court failed to impose the sentence for possession of a firearm by a convicted felon at hard labor even though a sentence for that offense must be served at hard labor. La.R.S. 14:95.1(B). Thus, Defendant's sentence is illegally lenient in this regard as well. "Although the authority is granted and discretionary under La.Code Crim.P. art. 882, this court will not consider an illegally lenient sentence unless it is an error raised on appeal." *State v. Mayfield*, 18-420, pp. 3-4 (La.App. 3 Cir. 12/6/18), 261 So.3d 101, 104, *writ denied*, 19-46 (La. 5/28/19), 273 So.3d 316. As the State has not complained of Defendant's sentence being illegally lenient in this case, we will not amend it.

**DISCUSSION**

We will first address Defendant's pro se assignments of error, which include a challenge to the sufficiency of the evidence pursuant to *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979), as a successful challenge on this basis would result in Defendant's acquittal, thereby mooting the remaining errors and necessitating the denial of appellate counsel's motion to withdraw. *See State v. Hearold*, 603 So.2d 731 (La.1992).

3

**Insufficiency of the Evidence**

In his first pro se assignment of error, Defendant argues that the evidence adduced against him at trial was insufficient to support his conviction for second degree murder.[1] The analysis for an insufficiency claim is well settled:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (citing *State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

Louisiana Revised Statutes 14:30.1 provides, in pertinent part:

A. Second degree murder is the killing of a human being:

(1) When the offender has a specific intent to kill or to inflict great bodily harm; or

(2) When the offender is engaged in the perpetration or attempted perpetration of . . . armed robbery, . . . even though he has no intent to kill or to inflict great bodily harm.

At trial, the State presented two theories of guilt: specific-intent murder and felony murder.

Defendant argues that the State failed to establish at trial that he had the requisite level of intent to support his conviction. He claims that the evidence

---

[1] Defendant does not challenge his conviction and sentence for possession of a firearm by a convicted felon.

proved that he "was at best an accomplice to or an accessory before the fact of an attempted armed robbery" of the victim.

Defendant's argument ignores direct evidence that he shot the victim. As previously mentioned, Defendant's close friend, Glover, testified that he confessed to her that he shot G-Money in the head. Accomplice Bowers testified that when he and Defendant were in G-Money's shed, Defendant shot the victim after he began hollering and refused to "Give it up." Bowers, as well as the victim's friend, Paul Kennerson, who was in the shed during the robbery, testified that the victim was on his knees when shot. Similarly, Glover testified that Defendant told her the victim was on his knees when Defendant shot him. At trial, Orphey testified that when the other men returned to Defendant's car, Ned asked Defendant "What you got?" and the latter replied, "I got a body[,]" which Orphey understood to mean that Defendant had killed someone. Defendant's cousin and accomplice, Ned, testified that shortly after the shooting, Orphey, the getaway driver, asked Defendant "What did you get[,]" to which Defendant answered, "A body." Ned explained that Defendant's reply meant that he had killed somebody. When Ned later saw Defendant in jail, Defendant stated that he shot the victim because the victim "tried to run up on him."

We conclude that the foregoing evidence was sufficient to support Defendant's conviction for second degree murder. "It is well-settled jurisprudence that the testimony of a single witness, absent internal contradictions or irreconcilable conflicts with physical evidence, is sufficient to support a conviction." *State v. Jeter*, 09-1004, p. 3 (La.App. 3 Cir. 4/7/10), 33 So.3d 1041, 1043. *See also*, *State v. Pierre*, 14-1071 (La.App. 3 Cir. 5/6/15), 170 So.3d 348, *writ denied,* 15-1151 (La. 5/13/16), 191 So.3d 1054. As stated in *Kennerson*, credibility determinations belong to the fact finder. The jurisprudence is clear that

5

a fact finder is free to believe some, none, or all of any witness's testimony. "It was the jury's prerogative to accept or reject the witnesses' testimony, and the appellate court may not second guess the rational credibility determinations of the factfinder." *State v. Baxley*, 14-48, p. 9 (La.App. 3 Cir. 5/7/14), 139 So.3d 556, 561.

The record reflects that the State adduced evidence and testimony from multiple witnesses to support its theory that Defendant had the specific intent to kill the victim. Accordingly, we conclude that the State satisfied its burden of proving the elements of La.R.S. 14:30.1(A)(1), specific-intent murder, beyond a reasonable doubt. As a result, we need not address Defendant's arguments that relate to whether the State proved he was guilty of felony murder. Thus, we find no merit to Defendant's claim that there was insufficient evidence to support his conviction.

**Ineffective Assistance of Counsel**

In his second pro se assignment of error, Defendant argues he received ineffective assistance of appellate counsel. He complains that "counsel simply requested review of the record for errors patent, and counsel seemingly identified but[] failed to assert any new grounds on appeal." In essence, Defendant is claiming that appellate counsel is ineffective for having filed an *Anders* brief. This is inappropriate from a procedural standpoint, as the question at hand is whether appellate counsel has demonstrated in brief that he should be allowed to withdraw due to a lack of non-frivolous errors to assert for review. If counsel has failed to make such a demonstration, then the remedy is to deny the motion to withdraw and order counsel to brief any non-frivolous issues that are identified. *See State in the Interest of L.D.L.*, 97-1634 (La.App. 3 Cir. 4/29/98), 714 So.2d 780.

6

Defendant argues that appellate counsel should have argued that the evidence adduced against him at trial was insufficient to support his conviction. As detailed in our discussion of the first pro se assignment of error, the insufficiency argument lacks merit.

Next, Defendant argues that the trial court did not properly instruct the jury regarding the law of principals. The controlling statute, La.R.S. 14:24, states: "All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals." The trial court told the jury: "All persons concerned in the commission of a crime are principals and are guilty of the crime charged, if, whether present or absent, they directly commit the act constituting the crime, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime." Although the trial court did not quote the statute verbatim, the instruction closely tracked its wording. Thus, we conclude that the trial court correctly stated the law of principals.

Lastly, Defendant contends that the trial court did not properly instruct the jury regarding available responsive verdicts. We have thoroughly reviewed the trial transcript, and it reveals that the trial court did, in fact, fully instruct the jury regarding the responsive verdicts applicable to the charges against Defendant. Finally, Defendant suggests that the State failed to prove he had specific intent to kill. As previously discussed, we find that the State did present evidence that Defendant possessed the requisite specific intent to support his conviction under La.R.S. 14:30.1(A)(1).

Because we have determined that Defendant's pro se arguments lack merit, we will proceed to the *Anders* analysis.

7

## _Anders_ Analysis

Explaining _Anders v. California_, 386 U.S. 738, this court has stated:

> In _State v. Benjamin_, 573 So.2d 528 (La.App. 4 Cir. 1990), the fourth circuit explained the _Anders_ analysis:
>
>> When appointed counsel has filed a brief indicating that no non-frivolous issues and no ruling arguably supporting an appeal were found after a conscientious review of the record, _Anders_ requires that counsel move to withdraw. This motion will not be acted on until this court performs a thorough independent review of the record after providing the appellant an opportunity to file a brief in his or her own behalf. This court's review of the record will consist of (1) a review of the bill of information or indictment to insure the defendant was properly charged; (2) a review of all minute entries to insure the defendant was present at all crucial stages of the proceedings, the jury composition and verdict were correct and the sentence is legal; (3) a review of all pleadings in the record; (4) a review of the jury sheets; and (5) a review of all transcripts to determine if any ruling provides an arguable basis for appeal. Under C.Cr.P. art. 914.1(D) this Court will order that the appeal record be supplemented with pleadings, minute entries and transcripts when the record filed in this Court is not sufficient to perform this review.

_Id._ at 531.

While it is not necessary for Defendant's counsel to "catalog tediously every meritless objection made at trial or by way of pre-trial motions with a labored explanation of why the objections all lack merit[,]" counsel's _Anders_ brief must " 'assure the court that the indigent defendant's constitutional rights have not been violated.' _McCoy_ [_v. Court of Appeals of Wisconsin_, 486 U.S. [429] at 442, 108 S.Ct. [1895] at 1903, 100 L.Ed.2d 440 [ (1988) ]." _State v. Jyles_, 96-2669, p. 2 (La. 12/12/97), 704 So.2d 241. Counsel must fully discuss and analyze the trial record and consider "whether any ruling made by the trial court, subject to the contemporaneous objection rule, had a significant, adverse impact on shaping the evidence presented to the [trier of fact] for its consideration." _Id._ Thus, counsel's _Anders_ brief must review the procedural history and the evidence presented at trial and provide "a detailed and reviewable assessment for both the defendant and the appellate court of whether the appeal is worth pursuing in the first place." _State v. Mouton_, 95-981, [p. 2] (La. 4/28/95), 653 So.2d 1176, 1177.

*State v. Sanders*, 16-470, pp. 5-6 (La.App. 3 Cir. 12/7/16), 209 So.3d 143, 147-48 (last alteration ours), *writ denied*, 17-218 (La. 11/6/17), 229 So.3d 470.

Pursuant to *Anders* and *Jyles*, 704 So.2d 241, appellate counsel has filed a brief asking to withdraw, as his review of the record revealed no non-frivolous issues for appeal. Counsel starts his review of the record by addressing the possibility of an insufficiency of the evidence claim. Much like our review of Defendant's pro se assignment on this issue, counsel concludes that the State presented a solid case of specific-intent murder. Counsel also observes that the State presented evidence, including Defendant's own statement, to support its alternative theory that Defendant was a principal to an attempted armed robbery in which a killing occurred.

The *Anders* brief includes a discussion of the accomplices' testimony, noting that they did not give statements against Defendant until they learned he had implicated each of them. Counsel points out, however, that Defendant's trial counsel "understandably attacked the credibility" of the accomplices. He thus submits that the issue of credibility was squarely before the jury, who chose to convict Defendant. Further, as we previously noted, credibility was a matter for said jury to decide, and this court is prohibited from second guessing the jury's determination of credibility. *State v. Baxley*, 14-48 (La.App. 3 Cir. 5/7/14), 139 So.3d 556.

Counsel notes that the State also proved the companion charge of possession of a firearm by a convicted felon. It presented fingerprint evidence, including prior arrest cards, to show that Defendant was the same man convicted of aggravated burglary in 2013. Clearly, the State presented evidence sufficient to prove that Defendant possessed a firearm during the offense.

Counsel addresses the motion for new trial filed by Defendant which alleged that the State interfered with his right to counsel by deliberately creating a technical conflict of interest that kept Defendant's original public defender from continuing to represent him. Appellate counsel notes the record is not sufficient to address this claim and, thus, should be addressed in the post-conviction relief process, where the record can be further developed regarding this issue. Counsel catalogues several objections made by trial counsel but notes they either lacked merit or constituted harmless error. We agree that consideration of this issue should be deferred.

Counsel also observes that Defendant received the mandatory sentence of life in prison and the maximum sentence of twenty years for possession of a firearm by a convicted felon. Trial counsel did not offer any mitigating evidence and did not object to the sentences. Appellate counsel asserts that although trial counsel's performance was deficient, Defendant would not be able to establish prejudice and thus show ineffective assistance counsel pursuant to *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984).[2]

In a recent case, this court stated:

> Additionally, Defendant did not file a motion to reconsider his sentence. Ordinarily, the failure to seek reconsideration of a sentence precludes a defendant from raising the issue on appeal. La.Code Crim.P. art. 881.1. However, this court has reviewed sentences for bare excessiveness in the interest of justice even where no motion for reconsideration is filed. *State v. Davis*, 06-922 (La.App. 3 Cir. 12/29/06), 947 So.2d 201.

> Defendant received the maximum sentences for aggravated burglary and armed robbery and a mandatory life sentence for aggravated rape. Counsel made no objection to the sentences. Appellate counsel notes an error by the trial court regarding the two maximum sentences, if any at all, would be harmless because of the

---

[2] "[I]neffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice." *Strickland*, 446 U.S. at 693.

mandatory life sentence. Defendant has no non-frivolous grounds on which to appeal his sentences.

*State v. Harrison*, 19-239, pp. 5-6 (La.App. 3 Cir. 11/6/19), 283 So.3d 1050, 1054-55. Considering *Harrison*, we find that appellate counsel is correct in his assessment regarding a potential *Strickland* claim concerning Defendant's sentences.

We find that appellate counsel has fully demonstrated that he reviewed the record and determined there are no non-frivolous issues to raise on appeal. We have also reviewed the record and agree. Defendant's pro se assignments of error lack merit. Therefore, appellate counsel's motion to withdraw is granted, and Defendant's convictions and sentences are affirmed. Defendant's allegation that the State interfered with his right to counsel is deferred to the post-conviction relief process.

**MOTION TO WITHDRAW GRANTED. CONVICTIONS AND SENTENCES AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.

11